### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARK GILSON** | : | |
| **and** | : | |
| **E. MARC COSTANZO,** | : | **CIVIL ACTION** |
| **Plaintiffs,** | : | |
| **v.** | : | **No. 2:20-cv-00758** |
| | : | |
| **CITY OF PHILADELPHIA AND** | : | |
| **LAWRENCE KRASNER** | : | |
| **Defendants.** | : | |
| | : | |

### DEFENDANTS CITY OF PHILADELPHIA AND
### LAWRENCE KRASNER'S PRETRIAL MEMORANDUM

## I.  NATURE OF THE ACTION

Defendant Lawrence S. Krasner was elected as the Philadelphia County District Attorney on November 7, 2017 and took office on January 2, 2018. Mr. Krasner made a number of personnel changes in the first few weeks of his administration, including terminating the employment of 33 employees in the District Attorney's office ("DAO"). Plaintiffs Mark Gilson and E. Marc Costanzo were among those whose employment was terminated and have asserted age discrimination claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). However, there is no evidence that Defendant Krasner's legitimate non-discriminatory reasons for terminating Plaintiffs were false or a pretext for discrimination.

## II.  COUNTER-STATEMENT OF FACTS

The DAO attorneys are at-will employees who serve at the pleasure of the District Attorney. That gave Mr. Krasner the right to pick his own team. In the first few weeks of his administration, Mr. Krasner made a number of personnel changes, including terminating the employment of 30 attorneys. An additional 13 attorneys resigned, but were not asked to leave.

As will be discussed in greater detail below, Mr. Gilson had been in charge of the Conviction Review Unit and Mr. Costanzo had been in charge of the Special Investigations Unit, both areas of the DAO identified by Mr. Krasner during his campaign as requiring dramatic change.

In making employment termination decisions, Mr. Krasner considered his own experiences with and knowledge of the DAO and its individual DAO attorneys and sought input from trusted advisors and colleagues regarding the past conduct, reputations and criminal justice philosophies of these and other DAO employees. Mr. Krasner's overarching goal in making employment termination and retention decisions (i.e., picking his team) was whether each attorney had the skills, dedication and sense of justice needed to support and promote his progressive vision of criminal justice. Although personnel files were made available, Mr. Krasner did not review them because he (correctly) lacked confidence that the files contained complete, reliable, or helpful information. Mr. Krasner also did not seek formal input from supervisors in the outgoing administration or talk to those employees he was considering for termination, because he viewed the office as "tribal" and overly "self-protective."

At the time he took office, Mr. Krasner was 56 years old. Nineteen (19) of the 30 attorneys terminated on January 5, 2018 were under the age of 50, including nine (9) attorneys in their thirties and one attorney in her twenties.

| Age Bracket | Attorneys Terminated on January 5, 2018 |
| --- | --- |
| Under 40 | 10 |
| Between 40 and 49 | 9 |
| Over 50 | 11 |

In his first week in office and over the next 30 days, Mr. Krasner hired fifteen (14) attorneys, including ten (10) attorneys over 40. Seven (7) of these new hires were older than Plaintiffs. In fact, the data shows that the number of attorneys in the office over the age of 40 (not including Mr. Krasner) did not materially change during this period.

| Age Bracket | DAO Attorney Count as of January 1, 2018 | January 5, 2018 DAO Attorney Terminations | January 2018 Voluntary DAO Attorney Departures | DAO Attorney Hires within 30 days of January 5, 2018 | Net Change |
|---|---|---|---|---|---|
| Under 40 | 198 | -10 | -7 | +4 | -13 |
| Over 40 | 98 | -20 | -5 | +10 | -15 |

By the end of July 2018, Mr. Krasner had hired twenty-two (22) attorneys over the age of 40, including the following:

- Thirteen (13) attorneys that were older than Plaintiffs (age 59 or older): Hon. Carolyn Temin (83); Richard Glazer (75); Ronald Simon (70); Charles Cunningham (69); Robert Listenbee (69); Paul George (67); Kevin Murphy (66);  Flo Messier (65); Raymond Roberts (64); Michael Giampietro (64); Vincent Corrigan (59); Patricia McKinney (59); Nancy Winkelman (59); Jeffrey Lindy (59); and
- Nine (9) attorneys between the ages of 40 and 58: Anthony Voci (54); Patricia Cummings (51); Crystal Powell (50); Paul Reddell (47); Joseph Green (46); Noel Ann  DeSantis (43); Carrie Wood (41); Varghese Kurian (41); and Tracey Tripp (41).

These attorneys took on a variety of roles in the new administration, ranging from policy-level and supervisory roles to staff attorney unit assignments, including the major trial unit, the special investigations unit, the waiver unit, the conviction integrity unit, the pre-trial unit, and the juvenile unit.

A.    **Plaintiff Mark Gilson**

Mr. Gilson joined the DAO in 1987 and was a prosecutor in the Homicide Unit from April 1992 to January 2010. In January 2010, he became a Supervising Chief, first in the Major Trials Unit (1/2010 to 11/2010), and then in the Northeast Division (11/2010 to 3/2014). In March 2014, Mr. Gilson became the Director of a newly-formed Conviction Review Unit, a position he held for almost three years. In January 2017, following a Philadelphia Inquirer expose that the Conviction Review Unit had done nothing in the three years of its existence, Mr. Gilson was reassigned to a prosecutor position in the Insurance Fraud Unit, which was funded by grants from the insurance industry.

When Mr. Krasner took office on January 2, 2018, Plaintiff Mark Gilson was one of seven (7) staff attorneys in the Insurance Fraud Unit: Gail Fairman (age 62); Peter Berson (age 61); Mark Gilson (age 58); Dawn Holtz (age 55); Debra Naish (age 54); Terri Domsky (age 54); and Dawn Ferrell (age 47). Mr. Gilson was the only staff attorney in the Insurance Fraud Unit discharged on January 5, 2018.  The other six, all well over 40 years old, were retained.  Mr. Krasner testified at his deposition that he terminated Mr. Gilson's employment because he had: (1) a negative view of the Conviction Review Unit during the period Mr. Gilson headed the unit; and (2) a poor opinion of Mr. Gilson's ethics, tactics, and professional persona.

> What was dispositive for me, above all else, was my personal experience with Mark Gilson and the fact that the Conviction Review Unit was a conviction rubber stamp unit, and those things were completely incompatible with the standard of excellence and ethics I wanted in the office and they meant that he did not make the cut, did not make the team, and the coach gets to pick the team. Those were the things that were dispositive for me.

Mr. Krasner has known Mr. Gilson since the late 1980s, represented defendants in criminal cases where Mr. Gilson was the prosecutor,[1] and observed Mr. Gilson in court on numerous occasions. Over the years, Mr. Krasner formed a negative view of Plaintiff's ethics, tactics, and professional persona and considered him to be overly aggressive. Mr. Krasner specifically recalls one homicide case in which Mr. Gilson attempted to bring Mr. Krasner before a Grand Jury when Mr. Krasner sought discovery regarding a gang-related shootings that might have a bearing on his client's defense.[2] In connection with this incident, Mr. Krasner recalls that Mr. Gilson aggressively "poked him in the chest with his finger" and "demanded to know where [he] got this information."[3] Such tactics and behavior were incompatible with Mr. Krasner's goals for the office.

Mr. Krasner had no direct dealings with Mr. Gilson during the three years Mr. Gilson was the Director of the DAO Conviction Review Unit. However, Mr. Krasner knew that the Conviction Review Unit during this period was the subject of negative press coverage for doing nothing and negative commentary among colleagues in the criminal defense bar. In fact, colleagues told Mr. Krasner that claims submitted to the Conviction Review Unit would languish "for years" and calls for status updates were ignored. The Philadelphia Inquirer expose reported that there were no

---

[1] By way of example, Mr. Gilson tried a 2003 homicide case before Judge Mazzola in which Mr. Krasner and Michael Giampietro jointly represented defendant Kareem Morefield.

[2] Mr. Krasner does not currently have access to records relating to his criminal defense work and has been unable to recall the name of the defendant or other details regarding the case which was one of thousands he handled a decade or more ago. Although the Kareem Morefield case involves all the same players (Mr. Krasner, Mr. Gilson and Detective Bova), Mr. Krasner cannot definitively state that it is the case at issue.

[3] Andrew Wellbrock, a DAO staff attorney, described a very similar incident involving Mr. Gilson: "When I was assigned to the DAO's Gun Violence Task Force Unit, I encountered Mr. Gilson in a courtroom when he was the Chief of the Northeast Division. I had a case in one of the Northeast Division courtrooms and was not ready to proceed. The defendant overheard me talking about a new date and became disruptive, loudly mouthing-off that the DA was not ready and his case should be dismissed. Mr. Gilson did not know who I was and apparently mistook me for the defendant's attorney. Mr. Gilson charged up to me, aggressively poked his finger in my chest, and forcefully directed me "to get my client under control." I responded: "Whoa, whoa, same team." Mr. Gilson then turned away, grabbed the defendant by elbow, and escorted him out of the courtroom."

exonerations during Mr. Gilson's tenure.  Mr. Gilson asserts that one exoneration occurred during his tenure. However, Mr. Krasner understood that exoneration had been based upon the work on another DAO attorney.  In his 2017 campaign, Mr. Krasner publicly described the Conviction Review Unit as a "failed" unit and emphasized the need for both staffing and policy changes.  In Mr. Krasner's opinion, Plaintiff's record in the Conviction Review Unit demonstrated a lack of commitment to claims of actual innocence and conviction integrity.

Arun Prabhakaran was a member of Mr. Krasner's transition committee and was appointed his Chief of Staff in January 2018. During the transition period, Mr. Prabhakaran witnessed and participated in some of the conversations Mr. Krasner had with colleagues and advisors after the November 2017 election regarding proposed staffing changes. Mr. Prabhakaran specifically recalls Mr. Krasner stating on multiple occasions prior to January 5, 2018, his opinion that the Conviction Review Unit was "backwards and upside-down" and that the attorneys in the unit were more interested in preserving convictions than pursuing justice for the wrongly-convicted.  Based on these conversations, Mr. Prabhakaran understood that "Mr. Krasner did not want to retain the attorneys who had headed the Conviction Review Unit in the Seth Williams administration."

Mr. Prabhakaran also recalls Mr. Krasner describing the Grand Jury subpoena incident as part of the reason Mr. Krasner did not want to retain that particular prosecutor.

> I also recall Mr. Krasner describing a negative experience he had had with one of the DAO attorneys slated for discharge when he was working as a public defender. I do not recall the name of the DAO attorney involved and do not know whether it was Mr. Gilson.  Mr. Krasner stated that he had filed a motion seeking discovery regarding criminal gang activity that he believed might lead to evidence that could exonerate his client. Mr. Krasner said that in response, the DAO prosecutor served Mr. Krasner with a Grand Jury subpoena in an effort to force Mr. Krasner to disclose the source of the information underlying Mr. Krasner's discovery motion. Mr. Krasner said that he viewed this tactic as an aggressive and

inappropriate abuse of power and an example of the type of bullying behavior Mr. Krasner wanted to eradicate from the office.

Michael Giampietro is a well-known former criminal defense attorney who currently works for the DAO as a senior advisor. Mr. Giampietro specifically recalls hearing about the Grand Jury subpoena incident from Mr. Krasner when it happened and testified that this incident "left a bad taste in Larry's mouth."

Andrew Wellbrock is a DAO staff attorney who was assigned to the Conviction Review Unit in the Seth Williams administration after Mr. Gilson left the unit in January 2017. In his opinion, the Conviction Review Unit during Mr. Gilson's tenure did not function independently, did not have basic procedures and protocols in place, and did not vigorously investigate claims of actual innocence. Mr. Wellbrock stated that Mr. Gilson had only three active investigations (Pedro Colon, Shaurn Thomas, and Larry Walker) when he left the unit and that Mr. Gilson had failed to open and review letters from inmates and family members because he "didn't see it as part of his role."

Mr. Wellbrock further stated that Mr. Gilson drafted a memorandum outlining his conclusions regarding the Shaurn Thomas case in December 2016, in which Mr. Gilson concluded that Shaurn Thomas's alibi defense was not credible. According to Mr. Wellbrock, Mr. Gilson did not request or review the police homicide file as part of his investigation. Mr. Wellbrock ordered the Shaurn Thomas homicide file from the Philadelphia Police Department on March 31, 2017 and received the file on May 3, 2017. That file contained witness statements not found in the DAO homicide file that supported Mr. Thomas's claim of actual innocence. Based on this evidence, the DAO dismissed the charges and vacated the conviction on June 13, 2017, after Mr. Gilson was reassigned to the Insurance Fraud Unit.

B.      **Plaintiff E. Marc Costanzo**

Mr. Costanzo was a DAO prosecutor for six years at the outset of his legal career (1987-1993) and worked in several different units (Municipal Court Unit; Juvenile Court Unit; Habitual Offenders Unit; Major Trial Unit; and Homicide Unit).  In 1993, he left the DAO to join the Pennsylvania Attorney General's Office and worked there for twenty years.  In January 2013, Mr. Costanzo returned to the DAO and, after a brief stint in the Insurance Fraud Unit, worked in the Special Investigations Unit for three and one-half years, all but the first six months of which he was Unit Chief.   In December 2016, Mr. Costanzo was transferred to the Appeals Unit but continued to handle special investigations assignments.

When Mr. Krasner took office on January 2, 2018, Plaintiff Marc Costanzo was one of twenty-one (21) staff attorneys in the Appeals Unit.  Nine (9) of the twenty-one (21) staff attorneys were over the age of 40: Marc Costanzo (age 58); Michael Erlich (age 57); Anthony Pomeranz (age 56); Jonathan Levy (age 56); Lawrence Goode (age 55); Grady Gervino (age 49); Robert Petrone (age 47); Anya Rosin (age 47); and Tracy Piatkowski (age 40).   Mr. Costanzo was the only staff attorney in the Appeals Unit discharged on January 5, 2018.  Mr. Krasner terminated Mr. Costanzo's employment because Mr. Krasner had: (1) a negative view of the DAO's record in holding the police accountable during the period Mr. Costanzo headed the Special Investigations Unit; and (2) a poor opinion of Mr. Costanzo's ethics, sense of fairness, and professional persona.

Mr. Krasner has known Mr. Costanzo for over thirty years and recalls handling cases where Mr. Costanzo was the prosecutor in the late 1980s / early 1990s. Although Mr., Krasner cannot recall the details of these cases, he specifically recalls interacting with Mr. Costanzo in former Judge Angelo Guarino's courtroom.  Based on his exposure to Mr. Costanzo in Judge Guarino's courtroom, Mr. Krasner formed a negative view of Plaintiff's sense of fairness and commitment

to due process, in part because Mr. Costanzo expressed admiration of Judge Guarino, who was later removed from the bench for abusive behavior. Mr. Krasner viewed Judge Guarino as a bully who berated potential jurors and defense counsel.

> [W]hat I saw with Mr. Costanzo in that courtroom was complicity and a refrain that this man, who was not acting like an American at all, he was acting like a dictator, was an American hero. So it wasn't one conversation. In was a course of conduct over these – you know, during these trials. The offhand remark that he's an American hero, to me, simply crystalized the reality that Marc Costanzo was one hundred percent down with whatever the hell Angelo Guarino wanted to do with me or my client, and that, of course, had nothing to do with innocence because Angelo Guarino had no interest in innocence.

In short, Mr. Krasner viewed Mr. Costanzo as a prosecutor whose sense of fairness and criminal justice philosophy was incompatible with his own. Mr. Krasner was also aware that Mr. Costanzo had a reputation in the criminal defense community as "a bully."

Finally, Mr. Krasner did not view Mr. Costanzo as committed to holding accountable members of the police force who engaged in illegal conduct based on the lack of prosecutions during the period Mr. Costanzo was the Chief of the Special Investigations Unit. Mr. Krasner testified:

> Mr. Costanzo played a role during that period in [the] Special Investigations Unit, or that was my understanding, he had a role in that activity, and when you saw a complete vacuum of anything like evenhanded accountability for police officers and you knew he had a responsible position, the absence of those cases told you a lot.

Police accountability had long been an important issue for Mr. Krasner and it was a central theme in Mr. Krasner's 2017 campaign.

In addition, Mr. Prabhakaran stated that Mr. Krasner had identified Marc Costanzo to him on numerous occasions as someone Mr. Krasner did not intend to retain in his administration.

> Mr. Krasner said that he viewed Mr. Costanzo as someone whose judgment he did not trust and who was not interested in holding the

police accountable based on Mr. Costanzo's track record in the
Special Investigations Unit.

Mr. Prabhakaran also recalled that "both Mr. Krasner and Michael Giampietro said that they

viewed Mr. Costanzo as overly aggressive and a bully" and that Mr. Krasner viewed such

behaviors as "incompatible with Mr. Krasner's goals for the office."

Mr. Giampietro described Mr. Costanzo as "a difficult guy to deal with" and "kind of a

bully" and commented that he had observed Mr. Costanzo "running roughshod" over defense

counsel.

> In the criminal justice world, especially it was City Hall at the times
> you're talking about, whatever, prosecutors had a lot of power.
> Prosecutors had a lot of judges that they could do no wrong in front
> of, and some DAs took advantage of the home court advantage, what
> I would call it, a sports analogy, that, you know, they could do,
> basically, what they wanted. Some people took advantage of having
> the home court, having everything their way.
>
> And Costanzo was somebody who had no qualms about, basically,
> he knew where he was, he knew the advantages he had, and he took
> advantage of them on certain people.

Mr. Giampietro does not recalling discussing Mr. Costanzo with Mr. Krasner prior to the January

5, 2018 terminations, but stated, in his opinion, Mr. Costanzo's prosecutorial style was

fundamentally incompatible with Mr. Krasner's progressive vision for the office

Finally, Mr. Costanzo was Andrew Wellbrock's supervisor for approximately a year and a

half when Mr. Wellbrock was assigned to the Special Investigations Unit. The Special

Investigations Unit was responsible for investigating and prosecuting cases involving public

corruption and police misconduct. In Mr. Wellbrock's opinion, based on his experience in the

Special Investigations Unit, Mr. Costanzo took direction from the Philadelphia Police

Department's Internal Affairs Department and generally did not use independent judgment in

investigating police misconduct. Mr. Wellbrock also observed Mr. Costanzo clash with other

attorneys in the office and yell at co-workers. Mr. Wellbrock further stated that Mr. Costanzo marginalized subordinates who disagreed with him and had a reputation as a bully in the office.

      C.      **Mr. Krasner's Public Statements Regarding Institutional Change**

      In the absence of any actual evidence of age bias, Plaintiffs rely on certain public statements by Mr. Krasner to demonstrate that he "has a strong bias against and stereotypical views of older Prosecutors" and an "unwavering preference and affinity for young Prosecutors." Plaintiffs identified articles and interviews that they assert support their sweeping and unsupported conclusions about Mr. Krasner.

      In their Complaint, Plaintiffs quote portions of an interview of Mr. Krasner, which was conducted before he won the primary and published in the Intercept on May 16, 2017, highlighting certain language. The language quoted in the Complaint omits a more extended discussion that includes Mr. Krasner's statement that the office **"*already contains the dissent, meaning people who have been there for years but might have been frustrated for years. I know some of these folks because some of them would call me and tell me what they knew about corrupt cops, but couldn't do anything about it from the inside. Those people need to stay, and in supervisor positions, because they represent the kind of change that should come.*"** Mr. Krasner's full answer, with the language omitted by Plaintiffs reads:

> If you have a truly progressive DA, there's going to be a certain portion of the DA's office who can't stand the idea of change. They're going to leave. There are other people who are going to be made to leave because you cannot bring about real change and leave people in place who are going to fight change every step of the way. The ones who will leave will tend to be my generation, people who started in this business 30 years ago, which means they'll also tend to be white and male. That results in more openings, opportunities for greater diversity, and if we are to judge by what's happened in other jurisdictions, the office will become a tremendous magnet for new talent, because there are a ton of people who are either coming out of law school or who are mid-career

who would love to work in a truly progressive DA's office but haven't been able to find any.

> *That means you have really committed, dedicated, talented people who are coming into an organization that already contains the dissent, meaning people who have been there for years but might have been frustrated for years. I know some of these folks because some of them would call me and tell me what they knew about corrupt cops, but couldn't do anything about it from the inside. Those people need to stay, and in supervisor positions, because they represent the kind of change that should come*. And there are a lot of just malleable, mostly younger attorneys who did what they were told, and always wanted to do the right thing, and with proper training will do the right thing. I think real cultural change is possible.

Mr. Krasner testified he was discussing the challenges of effecting institutional change in his public statements and that he wanted the office to be a "destination for all talent," regardless of chronological age, who wanted to see reforms in the criminal justice system. Specifically, he stated:

> The reality is that what you have had in the Philadelphia DA's office for my entire career is you have had a particular philosophy. And when you have that particular philosophy, which is the same philosophy that has made this country the most incarcerated county in the world, and in many ways has torn apart all of the different things that we try to do to prevent crime, when you have that philosophy it hires people who share that philosophy. It trains people to follow that. It advances people who follow it. It turns into supervisors who follow it. And unfortunately it is a recipe for things to become more and more tribal. That is what happened in that office.

Mr. Krasner further testified that his desire to disrupt the DAO's institutional culture did not reflect a preference for younger attorneys, and that he sought out and hired mid- to late-career and retirement-age attorneys who shared his criminal justice philosophy including Judge Carolyn Engel Temin (83 years old when Krasner took office in January 2018) and Bob Listenbee (69 years old) who serve as his First Assistants and many others, including: Richard Glazer (75); Ronald Simon (70); Charles Cunningham (69); Robert Listenbee (69); Paul George (67); Flo Messier (65); Raymond Roberts (64); Michael Giampietro (64); Vincent Corrigan (59); Patricia McKinney (59);

Nancy Winkelman (59); Jeffrey Lindy (59); Anthony Voci (54); Patricia Cummings (51); Crystal

Powell (50); Paul Reddel (47); Joseph Green (46); Noel Ann  DeSantis (43); Carrie Wood (41);

Varghese Kurian (41); and Tracey Tripp (41). Mr. Krasner further explained

> When I hired Carolyn [Engel] Temin who was well past a mandatory
> retirement age as a judge after having been a prosecutor, a public
> defender, a judge, an international human rights judge, I was hiring
> someone at 83 years of age who very clearly is not brand new and who
> is progressive. Same thing when I hired Bob Listenbee, Barack Obama's
> head of juvenile justice for the United States of America at an age that
> was close to 70. The same is true when I asked Chip Junod, who had
> been [in] this office, the DA's office for many years, to come back to
> the DA's office from other employment. And he was considerably older
> than me and has now retired. The same thing when I asked Guy Garant,
> who was in the office for many years, [and] had already retired. And I
> asked Mr. Garant who is around my age or a bit older, I asked him to
> come back. He didn't do it only because basically his, he would be
> working for free giv[en] the situation with his pension. I have
> repeatedly, repeatedly asked people who are not, quote, young, unquote,
> to come into this office. I have attracted many of them. Our Chief of the
> Conviction Integrity Unit was hired from Austin, Texas at about 50
> years of age, one of many, many, many examples. Giampietro is a senior
> person. You know, it is not typical that senior people in prosecution,
> because of the culture, because of the legislation that was passed, it is
> not typical that they have progressive views. But it is a fact that there
> are many senior people who have exactly what we are looking for. And
> it's not just that we say we would hire them, we have hired them.

Plaintiffs also present out-of-context portions of their own purported transcriptions of an

October 7, 2017 radio interview in which Mr. Krasner used the term "old guard":

> [T]here is no question that the old guard in that [DA's] office is in
> control and the old guard in that office is not desiring change at all.
> In fact, one of them went out of his way to say that 'there is nothing
> wrong with this ship, the ship does not need to be righted and we
> do not need an outsider telling us what to do.' Well that crowd
> needs to go.
>
> They need to get out of the way and let people who are ex-Prosecutors
> who have been on the other side, let people who have a real moral
> compass about justice and, you know, let people who are
> sophisticated and modern and  understanding of the mistakes that
> have been made in the last fifty years. Let them run the show. And

if we can really do that, then I think there are those Prosecutors who are open to those ideas and that vision <u>then there are new Prosecutors who are going to be coming mid-career or straight out of law school.</u>

<u>There is an old guard there [in the DA's Office] who actually thinks Lynne Abraham for 19 years was doing the right thing </u>when frankly, she almost never did the right thing at all. You know, <u>there's that crew,</u> they're very loyal to a particular way of doing things. Which is very authoritarian, very unscientific, very political and they are not only going to resist, they are you might say in the throes of trying to resist even now. <u>Those folks got to go. I mean some of them are leaving already which is a good choice and some of them are going to go.</u>

So, yes, there will be turnover . . . <u>and people whose vision is incompatible with the progressive vision of the next District Attorney in Philadelphia,</u> and I hope that person will be me . . . <u>I mean they will be well-served to find another place to work.</u>

The language misleadingly quoted in the Complaint omits the context in which the comments were made:

> ***There are a lot of prosecutors, especially these days, who I think are really fair minded people who absolutely want to do the right thing and have always wanted that in a way that is, you know, directed towards justice and equality and sees the bigger picture***, *but* there is no question that the old guard in that office is in control and the old guard in that office is not desiring change at all.
>
> . . .
>
> Well that crowd needs to go.  They need to get out of the way ***and let people who are ex prosecutors who have been on the other side, let people who have a real moral compass about justice*** and, you know, let people who are sophisticated and modern and understanding of the mistakes that have been made in the last fifty years.  Let them run the show.   And if we can really do that, then ***I think there are those prosecutors who are open to those ideas*** and that vision, then there are new prosecutors who are going to be coming mid-career or straight out of law school who have heard the phrase "mass incarceration" who take seriously the idea of crime prevent as opposed to the DA's office being a political springboard.
>
> . . .

> As I said, I think there is an old guard, ***it certainly isn't [] everyone above a certain age, that's not the case []***, but [there] is an old guard there.

Moreover, Mr. Krasner testified that his use of the term "old guard" in this and other interviews has nothing to do with chronological age.

> Q: When you said the old guard needs to go, what did you mean?
>
> A: The reference [is] to the French revolution. Are you not aware of it? Have you looked up what old guard means? It means entrenched . . . It means the entrenched people who have been in control and who are resistant to change. The old guard, Napoleon's guard, were not necessarily old, they were soldiers. In fact, they were rather vigorous soldiers and had to be of a fairly reasonable age in order to fight. That is what old guard refers to. It refers to the people who come from an older philosophy who are in control. They might be senior. They might be young. But either way they are [adherents] to a philosophy and they are unwilling to change.
>
> [W]hen you have any organization that has taken power and that entrenches that power over a period of time there will be some people among them who are older. But it is a question of philosophy. It's not in and of itself just a question of age. As you see cultural shift, as you see a move, for example, from racial segregation in the south to the beginnings of racial integration in the south to more general integration in the south to new attitudes about race, what you are seeing are generational shifts. There are young white supremacists right now who want to go back and refight the Civil War. They're called the Boogaloo Boys. They are old guard. They might be 16 years old but they are old guard.

Other 2017 public statements by Mr. Krasner, ignored by Plaintiffs, confirm that Mr. Krasner does not view chronological age as determinative of an "old school" or "Frank Rizzo" attitude. For example, in a February 22, 2017 Philadelphia Magazine interview, Mr. Krasner stated:

> I think ***there are a lot of good people in the District Attorney's office, many of them starting as assistant district attorneys the year I started as a public defender, so I've known them since we were all law babies***. I think the problem over there is not individual prosecution. I think the problem over there is a culture that, in my mind, flows out of the long-racist and insensitive traditions that

come from the Rizzo era.  I believe that I won't get pushback.  ***I believe that there are a lot of people in there who want to move in a different direction, and they're looking for someone who will change the culture so they can do that***.

Further, Mr. Costanzo's deposition testimony makes clear that he understood that Mr. Krasner's statements were about the need for cultural change and for a workforce that favors change. Mr. Costanzo agreed that some of those in the office who did not favor change would, and did, leave before the start of Mr. Krasner's term. Mr. Costanzo also agreed that Mr. Krasner would, and did, dismiss others who did not favor change but did not leave voluntarily.

> I believe there may be individual people who are set in their ways and may not want to change.  But as like a portion of the office or a particular place in the office, I would not put it that way, like, you, know, you could group the members of this unit or that unit. I think it may be true individually as to human beings.

Mr. Costanzo's objection is that he was not given an opportunity to speak with Mr. Krasner to convince him that he was not part of the "old guard."

> [I]f I were the incoming DA, you know, there might be people there that I want to talk to about their openness to making changes and to make my own judgment as to whether I believe that, you know, they could do so and that they could be a continued asset to the office.  I mean, that would be my inclination. Knowing that what he said is possibly true as to some number of individual people in the office.

Plaintiffs also point to statements made by Mr. Krasner months and even years after the January 5, 2018 lay-offs and assert that these statements evidence bias against older prosecutors. For example, Plaintiffs quote portions of an April 18, 2018 interview in which Mr. Krasner discusses his plan to "dismantle mass incarceration from the inside out."

> I think the younger generation actually really understands these issues, and I see that as they come out of law school and as I speak to them . . . they have grown up with DNA proving that innocent people end up in jail.  They've grown up with an understanding that mass incarceration is not only a huge problem for a society that claims to be free, but it is also racist.  These are discussions they've

had, and that they're willing to have.  So I feel like we are actually very strong among a lot of the prosecutors.

Some of the older ones, I mean let's be honest, it's hard to look back on your career and think that you were doing a good thing by stuffing so many people of color in jail.  It's hard to look back and say, 'I guess I dedicated my life to doing something that's kinda negative.'

At his deposition, Mr. Krasner testified that the phrase "some of the older ones" refers to "a subset of experienced attorneys who were older within the District Attorney's Office" whose approach to prosecution is "based upon a particular philosophy of maximal conviction, maximal incarceration, maximal charging." Indeed, in the same WBUR interview, Mr. Krasner states that a different subset of "older" attorneys will reject that flawed mindset: "But it's the truth, and its something they have to face, *and the ones who are willing to face it, and then move in a positive direction will do so*."

Mr. Krasner testified that he is committed to retaining and recruiting attorneys, regardless of age, who are committed to criminal justice reform. He has hired numerous people who are older from the outside and fired people who are younger. Mr. Krasner testified that he wants the office "to be a destination for all talent." He further explained that "if you are going to try to change culture then what you have to do is you have to bring in people who have different life experiences who have different perspectives."

## III.    MONETARY DAMAGES

See Plaintiffs' Memorandum.  Defendants dispute that punitive damages are available.

## IV.    WITNESSES

1. District Attorney Lawrence Krasner
   3 S. Penn Square, Philadelphia, PA
   Liability

2. Rachel Mitchell

Address to be supplied
Liability

3. Cecilia Madden[4]
   3. S. Penn Square, Philadelphia, PA
   Liability

4. Arun Prabhakaran
   1207 Chestnut Street, Philadelphia, PA
   Liability

5. Patrick Blessington
   3 S. Penn Square, Philadelphia, PA
   Liability

6. Michael Giampietro, Esquire
   3 S. Penn Square, Philadelphia, PA
   Liability

7. Richard Bova
   750 Race Street, Philadelphia, PA
   Liability

8. Jerome Brown, Esquire
   1628 JFK Blvd., Suite 1000, Philadelphia, PA
   Liability

9. Stuart Lev, Esquire
   601 Walnut Street, Suite 540 West, Philadelphia, PA
   Liability

10. Andrew Wellbrock, Esquire
    3 Penn Square, Philadelphia, PA
    Liability

11. Shamika Taliaferro, BBA, MPA (or other Board of Pensions representative)
    2 Penn Plaza, 16th Floor, Philadelphia, PA
    Damages

Defendants reserve the right to call any witness identified by Plaintiffs and any rebuttal

witnesses that may become necessary at trial.

---

[4]    Rachel Mitchell retired from the District Attorney's office.  Cecilia Madden can testify to the statistics and demographics of the Office.

V.      **EXHIBITS**

See Defendants' exhibit list attached as **Exhibit A**. The list below does not include exhibits or documents that Defendants may use for cross-examination, impeachment, rebuttal, or as demonstrative exhibits. Defendants reserve the right to identify documents and exhibits for those purposes at a later time. Defendants also reserves the right to use as an exhibit any document listed on Plaintiffs' exhibit list. Additionally, for purposes of cross-examination and rebuttal, Defendants reserve the right to use any document submitted to Plaintiffs' expert witnesses, and any document produce in this case.

VI.     **ESTIMATED TIME OF TRIAL**

5-7 Days.

VII.    **STIPULATIONS OF COUNSEL**

None at this time.

VIII.   **OBJECTIONS TO EXHIBITS AND EVIDENCE**

See Defendant's objections to Plaintiff's exhibit list at **Exhibit B.** Pursuant to the Court's policies and procedures, Defendant has not identified its objections on the basis of relevance pursuant to F.R. E. 401.  Defendants also assert the following objections to the admissibility of evidence expected to be offered:

- Defendant objects to the introduction of transcripts or partial transcripts of interviews or prepared by unknown individuals. (Authenticity, F.R.E. 901, 106)

- Defendant objects to the introduction of the bar passage rates of any DAO new hires as they may be viewed as prejudicial and are not probative of any matter at issue in this case. (F.R.E. 403)

- Defendant objects to the introduction of evidence about alleged incidents that occurred after Mr. Krasner's January 2018 personnel decisions, including those involving Dana Bazelon, Anthony Voci, and Movita Johnson-Harrell as they are highly prejudicial and not probative of any matter at issue in this case. (F.R.E. 403)

- Defendant objects to the introduction of evidence, by documents or third party testimony, regarding commendations for Plaintiffs' on-the-job performance. (F.R.E. 403)

- Defendant objects to Plaintiffs' unrealistic witness list, which does not provide Defendant with sufficient notice as to the witnesses Plaintiffs actually intend to call to testify at trial. For any witness who has not testified at a deposition for this case, Defendants request that Plaintiff provide an offer of proof as to each witness's relevant and admissible testimony.

- Defendant objects to plaintiff's designation of the following witnesses to testify to liability: Mark Gilson, Esq. (to the extent he is testifying to liability on Mr. Costanzo's claims), E. Marc Costanzo (to the extent he is testifying to liability on Mr. Gilson's claims), Carlos Vega, Esq., and Joseph Whitehead, Jr. (F.R.E. 403)

1. **Deposition testimony (including videotaped depositions) to be offered during a party's case-in-chief (with citations to the page and line number), including the opposing party's counter-designations.**

   The parties are not presently aware of any witnesses who will be unavailable to testify at trial, necessitating the offering of deposition testimony. If a witness is unavailable to testify, or if the parties want to offer any deposition testimony into evidence, Defendants join in Plaintiffs' proposal that the parties either take a trial deposition or work together to prepare the necessary deposition transcript designations.

## IX.   OTHER MATTERS

None at this time.

/s/ David Smith                                    /s/ Lisa Swiatek
_____      _____
David Smith, Esquire                          Lisa A. Swiatek, Esquire
Anne Kane, Esquire                            City of Philadelphia Law Department
Samantha Banks, Esquire                    Labor and Employment Unit
Schnader Harrison Segal & Lewis LLP   1515 Arch Street, 16th Floor
1600 Market Street, Suite 3600            Philadelphia, PA 19102
Philadelphia, PA 191013

Counsel for District Attorney                Counsel for City of Philadelphia
Lawrence Krasner


Dated: February 18, 2022

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **MARK GILSON and** | : | |
| **E. MARC COSTANZO,** | : | |
| **Plaintiffs** | : | |
| | : | |
| | : | **Civil Action No. 20-0758** |
| **vs.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | |
| **and** | : | |
| **LAWRENCE S. KRASNER** | : | |
| **Defendants.** | : | |
| | : | |
| | : | |

<u>**DEFENDANTS, THE CITY OF PHILADEPHIA AND LAWRENCE KRASNER'S**</u>
<u>**JOINT EXHIBIT LIST**</u>

Defendants, the City of Philadelphia and Lawrence Krasner, hereby exchange their joint exhibit list. The list below does not include exhibits or documents that Defendants may use for cross-examination, impeachment, rebuttal, or as demonstrative exhibits. The Defendants reserve the right to identify documents and exhibits for those purposes at a later time. The Defendants also reserves the right to use as an exhibit any document listed on Plaintiffs' exhibit list. Additionally, for purposes of cross-examination and rebuttal, the Defendants reserve the right to use any document submitted to Plaintiffs' expert witnesses, and any document produced in this case.

| <u>Trial Ex. #</u> | <u>Bates Range</u> | <u>Ex. #</u> | <u>Description</u> |
|---|---|---|---|
| D1 | City 001-002 | | Breakdown of separated employees |
| D2 | City 003-004 | | January 5, 2018 Memo |
| D3 | City 011-024 | | Respondents' Amended Answer to Costanzo PHRC Complaint, dated 12-13-2018 |

| Trial Ex. # | Bates Range | Ex. # | Description |
|---|---|---|---|
| D4 | City 025-027 | | Verified Statement of Defendant Krasner for Answer to Costanzo PHRC Complaint, dated 12-12-2018 |
| D5 | City 028-067 | Costanzo-4 and Burns (City 54-55);  Blessington ex. (City 56-57) | Marc Costanzo Personnel File, Part 1 |
| D6 | City 068-081 | | Respondents' Answer to Costanzo PHRC Complaint, dated 12-10-18 |
| D7 | City 082-086 | | Respondent's Position Statement in response to Costanzo PHRC Complaint |
| D8 | City 087-144 | | Mark Gilson Personnel File, Part 1 |
| D9 | City145-147 | Krasner/Gilson-3 | Verified Statement of Defendant Krasner for Answer to Gilson PHRC Complaint, dated 12-12-2018 |
| D10 | City230-414 | Costanzo-5; Gilson-1 | Policies Manual (Complete) |
| D11 | City 415-434 | | Summary Plan Description |
| D12 | City 480-494 | | Spreadsheet showing summary of DAO positions |
| D13 | City 495-553 | | Spreadsheet showing summary of DAO positions |
| D14 | City 602-617 | | Draft of Public Safety document |
| D15 | City 618 | | 1-5-18 DAO Separation list |
| D16 | City 623 -25 | | 1-12-18 List of Retirees from DAO |
| D17 | City 642 | | Roster of the Insurance Fraud Unit |
| D18 | City 643 | Costanzo-1 | Roster of Appeals Unit |
| D19 | City 644-648 | | Respondent's Position Statement in response to Costanzo PHRC Complaint, dated 1/22/2019 |
| D20 | City 649-661 | | Respondents' Answer to Gilson's PHRC Complaint, dated 12/10/2018 |
| D21 | City 662 | Costanzo-2 | Roster of Special Investigations unit |
| D22 | City 748-779 | | Costanzo Personnel File, part 2 |
| D23 | City 780-1087 | Gilson- 8 (City 782-783); Gilson-9 (City 780-81; 84-88) | Gilson Personnel File, part 2 |
| D24 | City 1088 | | Memo documenting Blessington interview |
| D25 | City 1089-1113 | | Files re. Giles and Santiago cases |
| D26 | CITY_LK_0001-2 | | Emails between Krasner and A. Prabhakaran (Redacted) |

| **Trial Ex. #** | **Bates Range** | **Ex. #** | **Description** |
|---|---|---|---|
| D27 | PMG-0001 | | Email from Gilson to R. Kimmich dated 1/7/2018 |
| D28 | PMG-0002 | | Email from R. Kimmich to Gilson dated 1/7/2018 |
| D29 | PMG-0003 | | Email from Gilson to R. Kimmich dated 1/9/2018 |
| D30 | PMG-0004 | | Email from R. Mitchell to Gilson dated 1/9/2018 |
| D31 | PMG-0005-6 | | Email from Gilson to R. Mitchell n dated 1/9/2018 |
| D32 | PMG-0007-8 | | Email from Gilson to R. Mitchell dated 1/11/2018 |
| D33 | PMG-0009 | | Report of Separation for Gilson dated 1/14/2018 |
| D34 | PMG-0010 | | City of Philadelphia Board of Pensions and Retirement – Retirement Information for Gilson dated 1/12/2018 |
| D35 | PMG-0011-12 | | City of Philadelphia Board of Pensions and Retirement – Benefit Application for Gilson dated 1/12/2018 |
| D36 | PMG-0013-15 | | Board of Pensions and Retirement Survivor Option Election Form for Gilson dated 1/12/2018 |
| D37 | PMG-0016 | | Municipal Retiree Election Application for Gilson dated 1/13/2018 |
| D38 | PMG-0017-19 | | Email from L. Freeman to Gilson dated 7/6/2018 |
| D39 | PMG-0020-22 | | Email from K. Stubbs to Gilson dated 5/31/2019 |
| D40 | PMG-00023-30 | Gilson-2 (PMG-00024-30) | Gilson PHRC Complaint dated 6/27/2018 |
| D41 | PMG-00031-42 | Gilson-2 (PMG-00032-42) | Gilson's PHRC Employment Discrimination  Questionnaire dated 10/9/2018 |
| D42 | PMG-00043-56 | | Gilson's Rebuttal to Respondents' Answer to the PHRC Complaint, dated 4/17/2019 |
| D43 | PMG-0059-60 | | Gilson's resume |
| D44 | PMG-0061 | | Email from PA Dept. of Labor re Gilson's unemployment claim, dated 1/12/2018 |
| D45 | PMG-0062 | | Statement of Unemployment Compensation Payments for Gilson |

| Trial Ex. # | Bates Range | Ex. # | Description |
|---|---|---|---|
| D46 | PMG-0063 | | Email from Gilson to J. Finnegan dated 2/2/2018 |
| D47 | PMG-0064 | | Email from Gilson to J. Finnegan dated 2/20/2018 |
| D48 | PMG-0065 | | Email from J. Finnegan to Gilson dated 2/20/2018 |
| D49 | PMG-0066 | | Email from Gilson to C. Deery dated 2/20/2018 |
| D50 | PMG-0067 | | Email from Gilson to F. Buz dated 2/25/2018 |
| D51 | PMG-0068 | | Email from Gilson to J. Selber dated 2/26/2018 |
| D52 | PMG-0069-70 | | Email from J. Selber to Gilson dated 2/26/2018 |
| D53 | PMG0071-72 | | Email from J. Lobel to J. Selber and Gilson dated 2/26/2018 |
| D54 | PMG-0073-75 | | Email from Gilson to J. Selber and J. Lobel dated 2/26/2018 |
| D55 | PMG-0076 | | Email from Attorney General Office to Gilson dated 2/27/2018 |
| D56 | PMG-0077 | | Email from Gilson to M. Perks dated 3/12/2018 |
| D57 | PMG-0078 | | Email from M. Perks to Gilson dated 3/16/2018 |
| D58 | PMG-0079 | | Email from M. Gilson to A. dated 3/17/2018 |
| D59 | PMG-0080 | | Email from A. Cornick to M. Gilson dated 3/18/2018 |
| D60 | PMG-0081-83 | | Email from Gilson to J. Lobel and J. Selber dated 3/26/2018 |
| D61 | PMG-0084 | | Email from Gilson to U.S. Attorney's Office dated 4/1/2018 |
| D62 | PMG-0085 | | Email from M. Gilson to C. Deery dated 4/2/2018 |
| D63 | PMG-0086-87 | | Email from S. Smith to Gilson dated 4/3/2018 |
| D64 | PMG-0088 | | Email from Gilson to S. Smith dated 4/3/2018 |
| D65 | PMG-0089 | | Email from S. Smith to Gilson dated 4/3/2018 |
| D66 | PMG-0090-91 | | Email from S. Smith to Gilson dated 4/7/2018 |
| D67 | PMG-0092 | | Email from Gilson to K. Mitchell dated 4/9/2018 |

| Trial Ex. # | Bates Range | Ex. # | Description |
|---|---|---|---|
| D68 | PMG-0093 | | Email from Gilson to K. Mitchell dated 4/9/2018 |
| D69 | PMG-0094-96 | | Email from J. Lobel to Gilson dated 4/11/2018 |
| D70 | PMG-0097 | | Email from K. Mitchell to Gilson dated 4/12/2018 |
| D71 | PMG-0098 | | Email from Gilson to S. Smith dated 4/13/2018 |
| D72 | PMG-0099 | | Email from S. Smith to Gilson dated 4/13/2018 |
| D73 | PMG-0100 | | Email from Gilson to S. Smith dated 4/13/2018 |
| D74 | PMG-0101-104 | | Email from J. Lobel to Gilson dated 4/13/2018 |
| D75 | PMG-0105-108 | | Email from Gilson to J Lobel dated 4/13/2018 |
| D76 | PMG-0109 | | Email from Gilson to J. Selber and J. Lobel dated 4/30/2018 |
| D77 | PMG-0110 | | Email from J. Selber to Gilson dated 4/30/2018 |
| D78 | PMG-0111 | | Email from Gilson to J. Selber and J. Lobel dated 5/22/2018 |
| D79 | PMG-0112 | | Email from J. Selber to Gilson dated 5/22/2018 |
| D80 | PMG-0113 | | Email from M. Gilson to A. Sodroski dated 6/10/2018 |
| D81 | PMG-0114-115 | | Email Gilson forwarded to himself, dated 6/28/2018 |
| D82 | PMG-0116-120 | | Signed offer letter from The Disciplinary Board |
| D83 | PMG-0138-139 | | Form W-2 Wage and Tax Statements for 2018 and 2019 for Gilson from Disciplinary Board of the Supreme Court |
| D84 | PMG-00140-149 | MSJ Ex. S | Article "Meet Philadelphia's Progressive Candidate for DA:  An interview with Larry Krasner" |
| D85 | PMG-00150-159 | Krasner/Gilson-14; MSJ Ex. V | Article "Philadelphia DA wants to Dismantle Mass Incarceration from the Inside Out" |
| D86 | PMG-00167-188 | | Gilson DAO performance appraisals from June 1994 to June 2017 |
| D87 | PMG-00248 | | Gilson 2017 W-2 |
| D88 | PMG-00249-250 | | Gilson Dec. 2017 paystubs |
| D89 | PMG-00251-252 | | Jan. 2018 A. Prabhakaran announcement |

| Trial Ex. # | Bates Range | Ex. # | Description |
|---|---|---|---|
| D90 | PMG-0279 | | Gilson's 2020 W-2 |
| D91 | PMG-0280 | | Gilson merit raise, dated 1/4/2021 |
| D92 | PMG-0310-318 | | Newspaper article from the Inquirer, published on 11/19/16, "Justice on hold: To Philly DA's Conviction Review Unit, no one is innocent" |
| D93 | PMG-0319 | | 2021 W-2 |
| D94 | PMG-0324 | | Letter from The Disciplinary Board of The Supreme Court of Pennsylvania to Gilson, dated 2/2/2022 |
| D95 | P-MC-0007 | | Letter from L. Krasner to DAO |
| D96 | P-MC-0008-9 | | 2012 DAO Offer of Employment to Costanzo |
| D97 | P-MC-0010-11 | | Signed acceptance of Offer of Employment dated 11/21/2012 |
| D98 | P-MC-0014 | | January 2018 DAO Paystub |
| D99 | P-MC-0018 | | Costanzo Resume |
| D100 | P-MC-0019-20 | | Unemployment Comp. Notice of Determination |
| D101 | P-MC-0021 | | Unemployment Comp. Notice of Financial Determination |
| D102 | P-MC-0022-27 | | 2019 Indeed inquiries and responses |
| D103 | P-MC-0028-30 | | 2019 Schedule C (redacted) |
| D104 | P-MC-0034-35 | | Email from Director of Human Resources dated 11/19/2015, encl. brochure re Connecting with Respect |
| D105 | P-MC-0069-76 | | Complaint filed by Plaintiff with the Pennsylvania Human Relations Commission on 6/22/2018 with request for dual filing with EEOC |
| D106 | P-MC-0077-78 | | Letter from EEOC to Plaintiff dated 10/10/2018 re dual filing of PHRC Complaint |
| D107 | P-MC-0079-89 | | Plaintiff's Employment Discrimination Questionnaire filed with PHRC on 10/9/2018 |
| D108 | P-MC-0090-138 | Costanzo-3 | Costanzo's Rebuttal to Respondents' Answer to the PHRC Complaint with exhibits, dated 4/18/2019 |
| D109 | P-MC-0139-144 | | 2018 and 2019 Tax Returns |
| D110 | P-MC-0198-229 | | Costanzo's 2017-2019 Income Tax Return |

| Trial Ex. # | Bates Range | Ex. # | Description |
|---|---|---|---|
| D111 | P-MC-0238 | | 11/24/15 Article "Racist emails could impact pending criminal cases against two black legislators" |
| D112 | P-MC-0239-240 | | 2020 Schedule C (Form 1040) Profit or Loss from Business |
| D113 | P-MC-0241 | | Costanzo 2017 W-2 |
| D114 | | Costanzo-3 | 12/4/15 Article "Philadelphia DA reassigns prosecutors caught up in Porngate" |
| D115 | | Gilson-3 | 5/23/17 Article, "After hearing, inmate imprisoned 24 years released" |
| D116 | | Gilson-4 | 10/9/19 Article, "North Philly man cleared of murder after 27 years in prison, the 10th exoneration under DA Larry Krasner" |
| D117 | | Gilson-5; MSJ Ex. L | 11/19/16 Article, "Justice on hold:  To Philly DA's Conviction Review Unit, no one is innocent" |
| D118 | | Gilson-6 | 8/23/16 Article, "25 years later, freed by DNA evidence:  'It's the greatest day of my life'" |
| D119 | | Krasner/Gilson-1; MSJ Ex. K | Defendant Krasner's Responses to Plaintiff Gilson's First Set of Interrogatories |
| D120 | | Krasner/Gilson-2 | Defendant Krasner's Response to Plaintiff Gilson's Request for Production of Documents |
| D121 | | | Feb. 10, 2020 Complaint |
| D122 | | | June 12, 2020 Defendants' Answer to Plaintiff's Complaint |
| D123 | | MSJ Ex. R | Sept. 30, 2020 Krasner Resp. to Costanzo Interrogatories |
| D124 | | | Sept. 30, 2020 Krasner Resp. to Gilson Interrogatories |
| D125 | | | Oct. 23, 2020 Gilson Resp. to Def. Interrogatories |
| D126 | | | Oct. 26, 2020 Costanzo Resp. to Def. Interrogatories |
| D127 | | | Feb. 24, 2021 Krasner Supplemental Resp. to Costanzo Interrogatories |
| D128 | | | Feb. 24, 2021 City Supplemental Resp. to Costanzo Interrogatories |

| Trial Ex. # | Bates Range | Ex. # | Description |
|---|---|---|---|
| D129 | | | April 12, 221 Costanzo Resp. to Def. Requests for Admission (with Verification) |
| D130 | | MSJ Ex. G | Lawrence Krasner deposition transcript, 2/25/21 |
| D131 | | | Mark Gilson deposition transcript, 3/17/21 |
| D132 | | MSJ Ex. U | E. Marc Costanzo deposition transcript, 3/18/21 |
| D133 | | | Hugh Burns deposition transcript |
| D134 | | | Patrick Blessington deposition transcript |
| D135 | | MSJ Ex. A | Rachel Mitchell Declaration with Exhibits |
| D136 | | MSJ Ex. B | Deposition Transcript of Lawrence Krasner, 9/16/20 |
| D137 | | MSJ Ex. C | Deposition Transcript of Michael Giampietro, 9/8/20 |
| D138 | | MSJ Ex. D | Deposition Transcript of Arun Prabhakaran |
| D139 | | MSJ Ex. E | Deposition Transcript of Rachel Mitchell |
| D140 | CITY0413 | MSJ Ex. F | January 5, 2018 Memo |
| D141 | | MSJ Ex. H | Letter from Mark Gilson to Lawrence Krasner, dated 5/1/02 |
| D142 | | MSJ Ex. I | Excerpts of Waiver Trial Transcripts |
| D143 | | MSJ Ex. J. | Arrest Warrant, dated 10/16/99 |
| D144 | | MSJ Ex. M | Philly Magazine Article, Meet the D.A. Candidate Who's Defended Black Lives Matter and Occupy in Court, dated February 22, 2017 |
| D145 | | MSJ Ex. N | Banks Declaration with Exhibits |
| D146 | | MSJ Ex. O | Arun Prabhakaran Declaration |
| D147 | | MSJ Ex. P | Deposition Transcript of Michael Giampietro, 3/1/21 |
| D148 | | MSJ Ex. Q | Andrew Wellbrock Declaration |
| D149 | | | Krasner Campaign Platform as of May 16, 2017, created using the Wayback Machine |
| D150 | | | Krasner Campaign Platform as of Oct. 13, 2017, created using the Wayback Machine |
| D151 | | | Krasner Campaign Platform as of Dec. 12, 2017, created using the Wayback Machine |

# EXHIBIT B

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-1 | Article published in The Intercept: "Meet Philadelphia's Progressive Candidate for DA: An Interview with Larry Krasner" | 5/16/2017 | PMG—00140-00149; LEVIN 161-170 (Mitchell-9) | F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article.<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time.<br><br>Hearsay |
| P-2 | Transcription of excerpts of interview given by Defendant Krasner to Jacobin Radio | 10/7/2017 | WHITEHEAD 110-111 (Mitchell-11) | Authenticity: Defendants objects to the introduction of transcripts or partial transcripts of interviews prepared by unknown individuals.<br><br>F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-3 | Link to audio recording of interview given by Defendant Krasner to Jacobin Radio | 10/7/2017 | P-3 on Vega-Whitehead Exhibit List | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-4 | Transcription of excerpts of interview given by Defendant Krasner to WHYY radio | 10/24/2017 | WHITEHEAD 113-114 (Mitchell-11) | Authenticity: Defendants object to the introduction of transcripts or partial transcripts of interviews prepared by unknown individuals.<br><br>F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-5 | Link to audio recording of interview given by Defendant Krasner to WHYY radio | 10/24/2017 | P-5 on Vega-Whitehead Exhibit List | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-6 | Link to audio recording of interview given by Defendant Krasner to WURD radio | 10/24/2017 | P-6 on Vega-Whitehead Exhibit List | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-7 | Article published by "Philadelphia DA Wants to Dismantle Mass Incarceration from the Inside Out" | 4/18/2018 | PMG-00150-00159; WHITEHEAD 011-020 | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-8 | Link to audio recording of interview given by Defendant Krasner to WBUR radio | 4/18/2018 | P-8 on Vega-Whitehead Exhibit List | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-9 | Link to recording of roundtable discussion in which Defendant Krasner participated | 5/4/2018 | P-9 on Vega-Whitehead Exhibit List | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-10 | Link to podcast interview given by Defendant Krasner to The Diego | 5/25/2018 | P-10 on Vega-Whitehead Exhibit List | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the article<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-11 | Transcript of podcast interview of Defendant Krasner published by Center for Court Innovation: "Prosecutor Power No. 6: Larry Krasner, The Antagonist" | 12/2018 | PV-000146-000166 (Mitchell-10) | Authenticity: Defendants objects to the introduction of transcripts or partial transcripts of interviews prepared by unknown individuals.<br><br>F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-12 | Clips from audio recordings of interviews given by Defendant Krasner to Jacobin Radio, WHYY, WURD, WBUR and The Voice of San Diego | 10/7/2017 10/24/2017 10/24/2017 4/18/2018 | PMG-00167: disc (PV-000131: same disc | Authenticity and F.R.E 106, to the extent Plaintiffs seeks to introduce only a portion of the interview.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-13 | Memorandum from Kelley Hodge to Members of the DAO, with attached letter from Defendant Krasner to Attorneys and Staff of the DAO | 11/9/2017 | P-MC-0006-0007 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-14 | E-mail from Anna Adams to Arun Prabhakaran et al re: Personnel data | 12/7/2017 | CITY-LK-001-002; CITY 551-552 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-15 | Memo from Arun Prabhakaran to Rachel Mitchell re: HR action with attached Memo re: Separations | 1/4/2018 | CITY 0305-0306 | Defendants object because the description of this document does not correspond with the document produced at bates number CITY0305-0306 |
| P-16 | Memo from Arun Prabhakaran to Rachel Mitchell re: Separations | 1/5/2018 | CITY 003-004 (CITY 413-414) | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-17 | Memo from Arun Prabhakaran to Rachel Mitchell re: Separations, with handwritten notes | 1/5/2018 | PMG-00057-00058 | Authentication: the document includes handwritten notations from an unknown source.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-22 | Announcement from Arun Prabhakaran to Staff of DAO | 1/12/2018 | PMG-00251-00252 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-23 | Charts produced by Defendant City in response to Court Order dated 3/2/2020 in Vega-Whitehead case, verified by Rachel Mitchell | 3/11/2020 and 3/16/2020 (verification dated 3/17/2020) | PK-00073-00079 (deposition exhibit in Vega-Whitehead case) | Defendants object because this bates number does not correspond with any production in this case and Upon information and belief, Plaintiffs are referring to PM-00073-79, Mitchell Dep. Ex. 4, and will respond accordingly.<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time, needlessly presenting cumulative evidence |
| P-24 | Declaration of John P. Delaney, Jr. | 2/10/2021 | PMG-00288-00295 | Hearsay |
| P-25 | Declaration of Ann Ponterio | 3/4/2021 | PMG-00296-00303 | Hearsay |
| P-27 | Performance Appraisal of Gilson | 6/24/1994 | PMG-00167; CITY 202 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-28 | Performance Appraisal of Gilson | 7/4/1994 | CITY 203 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-29 | Letter from DA Lynne Abraham to Gilson re: merit promotion and salary increase | 8/8/1994 | PMG-00189 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-30 | Letter from DA Lynne Abraham to Gilson re: merit promotion and salary increase | 9/9/1994 | CITY 198 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-31 | Letter from DA Lynne Abraham to Gilson re: merit promotion and salary increase | 9/13/1995 | PMG-00190; CITY 194 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-32 | Letter from DA Lynne Abraham to Gilson re: merit promotion and salary increase | 10/9/1996 | PMG-00191; CITY 193 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-33 | Performance Appraisal of Gilson | 7/31/1997 | CITY 190-191 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-34 | Performance Appraisal of Gilson | 10/1/1998 | CITY 183-189 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-35 | Letter from DA Lynne Abraham to Gilson re: merit promotion and salary increase | 3/31/1999 | PMG-00192; CITY 192 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-36 | Performance Appraisal of Gilson | 3/31/2000 | PMG-00168; CITY 179-182 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-37 | Letter from DA Lynne Abraham to Gilson re: merit promotion and salary increase | 6/6/2000 | PMG-00193; CITY 118 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-38 | Performance Appraisal of Gilson | 6/5/2001 | PMG-00171 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-39 | Performance Appraisal of Gilson | 6/17/2002 | CITY 176-178 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-40 | Letter from DA Lynne Abraham to Gilson re: merit raise | 8/8/2002 | PMG-00194 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-41 | Performance Appraisal of Gilson | 6/2/2003 | PMG-00169-00170; CITY 174-175 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-42 | Performance Appraisal of Gilson | 6/28/2004 | PMG-00172-00174; CITY 171-173 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-43 | Performance Appraisal of Gilson in draft form with charts and notes | 6/28/2004 | CITY 931-936 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-44 | Letter from DA Lynne Abraham to Gilson re: merit raise | 11/10/2004 | PMG-00195; CITY 119 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-45 | Performance Appraisal of Gilson | 6/30/2005 | PMG-00175-00176; CITY 169-170 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-46 | Performance Appraisal of Gilson with notes | 6/30/2005 | CITY 908-910 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-47 | Performance Appraisal of Gilson | 6/1/2006 | PMG-00177-00179; CITY 166-168 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-48 | Performance Appraisal of Gilson with charts and notes | 6/1/2006 | CITY 902-907 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-49 | Letter from DA Lynne Abraham to Gilson re: merit raise | 8/16/2006 | PMG-00196 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-50 | Performance Appraisal of Gilson | 6/8/2007 | PMG-00180-00182; CITY 163-165 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-51 | Memorandum from DA Lynne Abraham to Gilson re: merit increase | 11/5/2007 | PMG-00197; CITY 121 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-52 | Performance Appraisal of Gilson | 6/16/2008 | PMG-00183-00184; CITY 161-162 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-53 | Performance Appraisal of Gilson with chart and notes | 6/16/2008 | CITY 823-827 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-54 | Memorandum from DA Lynne Abraham to Gilson re: merit increase | 9/15/2008 | PMG-00198; CITY 120 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-55 | Performance Appraisal of Gilson | 6/1/2009 | PMG-00185-00186; CITY 159-160 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-56 | Letters from DA Lynne Abraham to Gilson re: perfect attendance record | 3/29/1995 to 1/6/2009 | PMG-00202-00210 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-57 | Letter from DA Seth Williams to Gilson re: salary increase | 3/8/2010 | PMG-00199 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-58 | Letter from DA Seth Williams to Gilson re: perfect attendance in 2012 | 3/15/2013 | PMG-00211 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-59 | Letter from DA Seth Williams to Gilson re: salary increase | 5/9/2014 | PMG-00200 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-60 | Letter from DA Seth Williams to Gilson re: salary increase | 12/2/2016 | PMG-00201 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-61 | Performance Appraisal of Gilson | 6/23/2017 | PMG-00187-00188; CITY 152-153 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-62 | Letter from Rev. Stanford Simmons, Jr. to DAO | 5/26/1992 | PMG-00226-00228 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-63 | Letter from DA Lynne Abraham to Rev. Stanford Simmons, Jr. | 6/3/1992 | PMG-00229 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-64 | Letter from Jacqueline Pepino to Gilson | 7/8/1993 | CITY 206-208, 211-213 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-65 | Memorandum from David Webb to Arnold Gordon and Raymond Haley re: Commonwealth v. Johnson | 7/14/1993 | CITY 204, 209 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-66 | Letter from Jacqueline Pepino to Gilson | 2/18/1995 | CITY 196 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-67 | Letter from Eleanor McDonough to DA Lynne Abraham | 5/23/1996 | PMG-00236-00237 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-68 | Letter from DA Lynne Abraham to Eleanor McDonough | 5/28/1996 | PMG-00238 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-69 | Letter from Gilson to Defendant Krasner re: Commonwealth v. Kareem Morefield | 5/1/2002 | Exhibit "H" of Defendants' Motion for Summary Judgment | Hearsay |
| P-70 | Excerpts of waiver trial transcript re: Commonwealth v. Alexander and Morefield | 5/2003 (various dates) | Exhibit "I" of Defendants' Motion for Summary Judgment | Hearsay |
| P-71 | E-mail from Kim McCain to DA Lynne Abraham | 5/14/2003 | PMG-00241 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-72 | E-mail from DA Lynne Abraham to Kim McCain | 7/2/2003 | PMG-00242 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-73 | Letters from Almeda Watson to Gilson, Vernon Chestnut and Sylvester Johnson and e-mail from Gilson to Edward McCann re: Lex Street case | 3/17/2004; 3/25/2004 | CITY 937-939 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-74 | Memorandum from DA Lynne Abraham to Gilson and Vernon Chestnut | 3/16/2004 | PMG-00243 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-75 | Letter from Joseph A. Birster to DA Lynne Abraham | 2/27/2006 | PMG-00244 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-76 | Letter from DA Lynne Abraham to Joseph A. Birster | 3/2/2006 | PMG-00245 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-77 | Correspondence from Edward McCann to Jan Bilton | 4/28/2006 | CITY 915-918 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-78 | E-mail from Edward McCann to Gilson | 1/23/2007 | CITY 900 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-79 | E-mail exchange between John DiDonato, Edward McCann, Arnold Gordon and John Delaney | 1/23/2007 | CITY 901 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-80 | E-mail from John D. DiDinato to Gilson with copy to Edward McCann | 1/24/2007 | CITY 899 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-81 | Documents pertaining to Gilson's receipt of ASIS Law Enforcement Appreciation Award including letter from Edward McCann | 3/2007 | CITY 893-898 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-82 | E-mails from Gilson to Edward McCann and Edward McCann to Ann Ponterio | 11/5/2008 | CITY 782-783 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-83 | E-mail exchange between Gilson, Cathie Abookire, Edward McCann and Ann Ponterio | 11/12/2008 | CITY 784 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-84 | E-mail from Ann Ponterio to Edward McCann re: meeting with Gilson | 2/9/2009 | CITY 785 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-85 | E-mail from Ann Ponterio to Edward McCann re: Gilson | 4/1/2009 | CITY 786 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-86 | E-mail from Ann Ponterio to Edward McCann re: Gilson | 8/17/2009 | CITY 788 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-87 | E-mail from Ann Ponterio to Edward McCann re: training session | 10/9/2009 | CITY 787 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-88 | Letter from Honorable John J. O'Grady, Jr. to DA Seth Williams with copy to Gilson | 11/19/2010 | PMG-00247; CITY 158 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-89 | Letter from Joseph and Rosemary DiLacqua to DA Seth Williams re: Gilson | 9/15/2011 | CITY 991-993 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-90 | E-mail from Melissa Francis to Jodi Lobel | 1/23/2012 | CITY 780-781 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-91 | Note from Mary Ann Kennedy and Estelle DiCamillo to Gilson | 7/9/2013 | CITY 155 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-92 | Memorandum from Gilson to John Delaney with note from John Delaney to Edward McCann | 7/17/2013; 7/22/2013 | CITY 154 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-96 | Resumé of Gilson | Undated | PMG-00059-00060 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-97 | Gilson's job search file including e-mails and correspondence pertaining to efforts to find employment | 2/2/2018 to 6/29/2018 | PMG-00063-00115 | Hearsay |
| P-100 | Annual Performance Evaluation of Gilson from PADB | 1/18/2019 | PMG-00121-00129 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-101 | Annual Performance Evaluation of Gilson from PADB | 12/12/2019 | PMG-00130-00134 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-102 | Annual Performance Evaluation of Gilson from PADB | 12/14/2020 | PMG-00275-00278 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-103 | Annual Performance Evaluation of Gilson from PADB | 1/24/2022 | PMG-00320-00323 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-104 | Letter from Paul J. Killion of PADB to Gilson re: merit increase | 3/12/2019 | PMG-00135 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-105 | Letter from Jesse G. Hereda of PADB to Gilson re: Extraordinary Performance Pay Award | 9/30/2019 | PMG-00136 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-106 | Letter of Paul J. Killion of PADB to Gilson re: merit increase | 12/29/2019 | PMG-00137 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-107 | Letter from Thomas J. Farrell of PADB to Gilson re: merit increase | 1/4/2021 | PMG-00280 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-108 | Letter from Thomas J. Farrell of PADB to Gilson re: merit raise and performance bonus | 2/2/2022 | PMG-000324 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-113 | PHRC Complaint of Gilson | 6/21/2018 | PMG-00024-00030 | Hearsay |
| P-125 | Declaration of Edward F. McCann, Jr. with Exhibits "A" to "G" | 1/14/2021 | PMG-00253-00274 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-126 | Declaration of Yvonne Ruiz with Exhibit "A" | 1/25/2021 | PMG-00281-00287 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-127 | Declaration of Charles F. Gallagher, III with Exhibit "A" | 3/15/2021 | PMG-00304-00307 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-128 | Declaration of Arun Prabhakaran | 4/13/2021 | Exhibit "O" of Defendants' Motion for Summary Judgment | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-129 | Expert report of Andrew C. Verzilli | 3/5/2021 | | Hearsay |
| P-130 | Supplemental expert report of Andrew C. Verzilli | 2/3/2022 | | Hearsay |
| P-131 | Curriculum vitae of Andrew C. Verzilli | Undated | | Hearsay |
| P-132 | Letter from Thomas A Sprague to DA Ronald Castille | 10/18/1990 | P-MC-0002-0003; CITY 062-063 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-133 | Letter from DA Ronald Castille to Thomas A. Sprague | 10/31/1990 | P-MC-0001 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-134 | Letter from DA Ronald Castille to Thomas A. Sprague | 2/19/1991 | CITY 061 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-135 | Costanzo Trial List | 3/1991 | P-MC-0015-0017 | Authenticity<br><br>Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-136 | Letter from DA Lynne Abraham to Costanzo re: Commonwealth v. Kenneth Tarver | 5/31/1991 | P-MC-0004 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-137 | Memorandum from DA Lynne Abraham to Costanzo re: Merit Promotion and Salary Increase | 4/29/1992 | P-MC-0005 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-138 | Performance Appraisal of Costanzo | 7/9/1993 | CITY 754 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-139 | Letter from Costanzo to DA Lynne Abraham re: resignation from DAO | 7/13/1993 | P-MC-0012 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-140 | Memorandum from Patrick Blessington. et al. to Awards Committee re: Attorney General Award for Excellence for Costanzo | 5/30/1997 | P-MC-0038-0041 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-141 | Letter from DA Seth Williams to Costanzo re: offer of position as ADA in Insurance Fraud Unit with attached Acceptance of Offer signed by Costanzo | 12/21/2012 | P-MC-0008-0011 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-142 | Memorandum from DA Seth Williams to Costanzo re: salary increase | 7/1/2013 | CITY 051 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-143 | Performance Appraisal of Costanzo | 7/5/2013 | P-MC-0031-0032; CITY 056-057 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-144 | Letter from DA Seth Williams to Costanzo re: salary increase | 11/12/2013 | P-MC-0033 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-145 | E-mail from Kathleen Martin to Costanzo, et al. re: receipt of ASIS Law Enforcement Appreciation Award | 2/19/2016 | P-MC-0036 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|---|---|---|---|---|
| P-146 | Letter from John Russell to Essam Rabadi re: ASIS Law Enforcement Appreciation Award | 2/18/2016 | P-MC-0037 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-147 | Performance Appraisal of Gilson | 2016 | CITY 054-055 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-148 | E-mail from Rachel Mitchell to Costanzo re: separation information | 1/9/2018 | CITY 028 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-156 | Resumé of Costanzo | Undated (2018) | P-MC-0018 | Hearsay |
| P-157 | Documents pertaining to job search of Costanzo | Various (2018 and 2019) | P-MC-0022-0027 | Hearsay<br><br>F.R.E. 403: unfair prejudice, confusing the issues, misleading the jury, wasting time |
| P-161 | PHRC Complaint of Costanzo | 6/27/2018 | P-MC-0069-0076 | Hearsay |
| P-171 | Expert report of Andrew C. Verzilli | 3/4/2021 | | Hearsay |
| P-172 | Supplemental report of Andrew C. Verzilli | 2/2/2022 | | Hearsay |
| P-173 | Curriculum vitae of Andrew C. Verzilli | Undated | | Hearsay |
| P-174 | Deposition transcript of Lawrence Krasner (and video) | 9/16/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-175 | Deposition transcript of Lawrence Krasner | 2/25/2021 | | Hearsay, Fed. R. Civ. P. 32 |
| P-176 | Deposition transcript of Michael Giampietro | 9/8/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |

Defendants' Objections to Plaintiffs' Exhibit List

| No. | Description | Date | Bates | Objection |
|-----|-------------|------|-------|-----------|
| P-177 | Deposition transcript of Michael Giampietro | 3/1/2021 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-178 | Deposition transcript of Rachel Mitchell | 8/28/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-179 | Deposition transcript of Arun Prabhakaran | 9/1/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |
| P-181 | Deposition transcript of Hugh Burns | 12/14/2020 | | Hearsay<br><br>Fed. R. Civ. P. 32 |